# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOANNE SEDILLO,

      **Plaintiff,**

    **vs.**                          **Civ. No. 16-862  KK**

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 17) filed December 8, 2016, in support of Plaintiff Joanne Sedillo's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits.  On February 23, 2017, Plaintiff filed her Motion to Reverse or Remand for Rehearing, With Supporting Memorandum ("Motion"). (Doc. 22.)  The Commissioner filed a Response in opposition on May 10, 2017 (Doc. 26), and Plaintiff filed a Reply on May 23, 2017.  (Doc. 27.)  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration.  Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Doc. 33.)

# I.  Background and Procedural Record

Claimant Joanne Sedillo ("Ms. Sedillo") alleges that she became disabled on September 15, 2009, at the age of forty because of osteoporosis, fibromyalgia, inflammatory bones and joints, depression, mood swings, restless sleep, headaches, swelling hands and feet, falling and back pain.  (Tr. 308, 344.[3])  Ms. Sedillo completed twelfth grade, and worked as a receptionist, phone operator, housekeeper, caregiver and beverage server.  (Tr. 320-25, 345.)  Ms. Sedillo last met the insured status requirements of the Social Security Act on December 31, 2011.[4] (Tr. 308.)

On September 6, 2012, Ms. Sedillo **protectively** filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*  (Tr. 293-294, 308.)  Ms. Sedillo's application was initially denied on May 10, 2013.  (Tr. 210-16, 217, 227-30.)  It was denied again at reconsideration on January 27, 2014.  (Tr. 218-25, 226, 236-40.)  On February 13, 2014, Ms. Sedillo requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 242-43.)  The ALJ conducted a hearing on September 16, 2015.  (Tr. 178-208.)  Ms. Sedillo appeared in person at the hearing with Attorney Ronald Harris.[5]  (*Id.*)  The ALJ took testimony from Ms. Sedillo (Tr. 183-205), and an impartial vocational expert ("VE"), Diane Weber.  (Tr. 206-08.)  On December 11, 2015, the ALJ issued an unfavorable decision.  (Tr. 12-24.)   On June 27, 2016, the Appeals Council issued its decision denying Ms. Sedillo's request for review and upholding the ALJ's final decision.  (Tr. 1-6.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 17) that was lodged with the Court on December 8, 2016.

[4] To receive benefits, Ms. Sedillo must show she was disabled prior to her date of last insured.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

[5] Ms. Sedillo is represented in these proceedings by Attorney Francesca J. MacDowell.

On July 27, 2016, Ms. Sedillo timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## II. **Applicable Law**

### A. **Disability Determination Process**

An individual is considered disabled for purposes of Social Security disability insurance benefits if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1)     At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[6] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)     At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[6] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)    If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B.    <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported

by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made her decision that Ms. Sedillo was not disabled at step four of the sequential evaluation. She found that Ms. Sedillo had the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(b). The ALJ explained that

> I determined the claimant has the ability to perform no more than the full range of medium work. Thus, the claimant can lift, carry, push or pull no more than 50 pounds at a time and frequently lift, carry, push or pull objects weighing up to 25 pounds. "Frequent" means occurring from one-third to two-thirds of an eight-hour workday. The claimant can walk off-and-on for no more than about six hours during an eight-hour workday, stand off-and-on for no more than about six hours during an eight-hour workday, and can stand or walk off-and-on for a total of about six hours during an eight-hour workday. The claimant can sit for approximately six hours total during an eight-hour workday. The claimant may stoop and bend frequently, which means stooping for one-third to two-thirds of the time during an eight-hour workday (404.1567; SSR 83-10).

(Tr. 19.) Based on the RFC and the testimony of the VE, the ALJ concluded that Ms. Sedillo was capable of performing her past relevant work as an administrative assistant. (Tr. 22-23.) In the alternative, the ALJ concluded at step five that considering Ms. Sedillo's age, education,

work experience, and RFC, Medical-Vocational Rule 203.29 directed a finding of "not disabled." (Tr. 23.)

Ms. Sedillo asserts the following three arguments in support of her Motion: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ's RFC error tainted the past work analysis, and the ALJ failed to determine the physical and mental demands of Ms. Sedillo's past relevant work; and (3) the ALJ's RFC error tainted the step five findings and she failed to consider nonexertional limitations related to Ms. Sedillo's fibromyalgia. (Doc. 22 at 3-18.)

## A. Medical History During the Relevant Period of Time[7]

On February 25, 2010, Ms. Sedillo presented to University of New Mexico Health Sciences Urgent Care with complaints of cough, increased fatigue, and right ear and neck pain. (Tr. 462-63.) Ms. Sedillo reported a two week history of cough, sweats and chills; a ten day history of right ear and neck pain at the lymph area; nausea and dizziness; and stated she wanted to sleep all the time. (Tr. 462.) Ms. Sedillo denied

> [a]cute hearing or vision changes, tinnitus; Chest pain and pressure; Headaches, numbness, tingling, weakness, particularly in extremities; Change in bowel and bladder habits (including loss of bowel and bladder control); Vomiting, hematemesis; hemoptysis; Diarrhea, melena, hematochezia, Pain in extremities, neck, back, and abdominal.

(Tr. 462.) CFNP Diane Cummings performed a physical exam, which was normal except for enlarged tonsils and poor dentition. (Tr. 462-63.) CFNP Cummings assessed suspected strep given the constellation of signs and symptoms, and possibly developing acute bronchitis. (Tr. 463.) She prescribed Amoxicillin and advised Ms. Sedillo to seek care if her symptoms persisted or worsened, and to follow up with dental care. (Tr. 463.)

---

[7] The relevant period of time is Ms. Sedillo's alleged onset date of September 15, 2009, through her date of last insured of December 31, 2011.

On June 25, 2010, Ms. Sedillo presented to the University of New Mexico Health Sciences Outpatient Clinic with complaints of low back and tooth pain. (Tr. 438-49.) Ms. Sedillo reported a one year history of low back pain, worse in the morning, and a one week history of pain in her teeth. (Tr. 438.) She described the back pain as stiffness, and stated that at times she had shooting pain that radiated down her lateral and medial thighs into her feet. (*Id.*) She stated the pain was better with walking and she had been trying to walk a mile or so most days of the week. (*Id.*) She stated she had been under major stress with the recent loss of her mother. (*Id.*) Ms. Sedillo believed that her teeth were "rotten" and the source of her teeth pain. (*Id.*) She explained she could not afford out of pocket dental care. (*Id.*) On physical exam, PA-C Karen Wesslowski noted a shallow ulceration parallel to Ms. Sedillo's left maxillary molar. (Tr. 439.) She also noted in pertinent part

> no costal vertebral tenderness. No spinal tenderness with palpation, no gross deformities or signs of trauma. Tenderness with deep palpation in the mid gluteal area bilaterally. Negative straight leg raises. . . . Muscle strength is 5+ on upper and lower extremities bilaterally. No obvious deformities, no trauma. . . . Patient had good eye contact. Mood is appropriate. Not anxious. Speech is not pressured. Thoughts are coherent and on tangent.

(Tr. 439.) PA-C Wesslowski assessed "[l]ow back pain – chronic in nature" and "apthous ulcer." (*Id.*) PA-C Wesslowski ordered an RF, CCP and ANA to check for autoimmune disease,[8] and ordered sacral and lumbar spine radiology studies.[9] (*Id.*) She prescribed Acyclovir for Ms. Sedillo's mouth ulcer, provided her with a list of free dental clinics, and encouraged her to go to one as soon as possible. (*Id.*) PA-C Wesslowski noted that Ms. Sedillo would follow up with Dr. Archambault to establish care at UNM. (*Id.*)

---

[8] On July 6, 2010, PA-C Wesslowski informed Ms. Sedillo that the tests for rheumatoid arthritis were negative. (Tr. 575.)

[9] Frontal, lateral, and lumbosacral spot, oblique radiographs demonstrated no acute abnormality with mild degenerative changes at the L5-S1 level. (Tr. 496.) On July 6, 2010, PA-C Wesslowski informed Ms. Sedillo that the x-rays demonstrated osteoarthritis in her lower back. (Tr. 575.)

On October 11, 2010, Ms. Sedillo presented to University of New Mexico Health Sciences Outpatient Clinic to establish care with Mara R. Archambault, M.D., and to follow up on her lower back pain. (Tr. 435-37.) Ms. Sedillo complained of a two year history of lower back pain that radiated as shooting pain down her legs bilaterally along the posterior aspect of her legs to the level of her ankles. (Tr. 435.) She also complained of being tired and having occasional dizziness when she turned her head. (Tr. 436.) Ms. Sedillo reported a recent history of abdominal pain with fevers and vomiting, but stated it was resolved. (Tr. 435-36.) Ms. Sedillo denied any lower extremity weakness, numbness, tingling or bowel or bladder incontinence or urine retention. (Tr. 435.) Ms. Sedillo reported taking Tylenol "here and there" for the pain, and stated she had not done any physical therapy or other treatments, and currently was not exercising. (*Id.*) On physical exam, Dr. Archambault noted in pertinent part that Ms. Sedillo had no extremity edema, negative straight leg raise bilaterally, strength grossly intact, normal gait, mild tenderness to palpation over lumbar paraspinous musculature, and no significant tenderness over the L-spine. (Tr. 436.) Dr. Archambault assessed chronic low back pain with sciatica. (*Id.*) She prescribed Ibuprofen 800 milligrams three times daily for 14 days and instructed her to follow up with her primary care physician. (*Id.*) Dr. Archambault provided Ms. Sedillo with an informational handout describing stretches for her back. (*Id.*) Ms. Sedillo stated she was not interested in physical therapy at that time. (*Id.*)

**B.      RFC Assessment**

At step two, the ALJ determined that Ms. Sedillo had severe impairments of degenerative disc disease and fibromyalgia through her date of last insured.[10] (Tr. 17.) At step three, the ALJ considered whether her impairments met or medically equaled the severity of a listing, and

---

[10] The ALJ also determined Ms. Sedillo had nonsevere impairments of obesity and migraines during the insured period. (Tr. 18.)

determined that the medical evidence did not establish the required criteria under Listing 1.04

*Disorders of the Spine*. (Tr. 19.) She further determined that

> [f]ibromyalgia is not a listed impairment, but based on SSR 12-2p, I considered the condition under listing 14.09D for inflammatory arthritis and find that the listing is not met because the claimant has not had persistent inflammation or persistent deformity of her joints. (Exhibits 1F/61/63/65/67, 2F/19).[11]

(Tr. 19.) At step four, the ALJ discussed the medical evidence related to Ms. Sedillo's degenerative disc disease and fibromyalgia as follows:

> Turning to the claimant's degenerative disc disease, although the claimant has a severe impairment, I find that the evidence fails to support the claimant's alleged limitations prior to the date last insured. While the claimant asserts that her disability arose in September 2009, the record is devoid of any medical treatment until February 2010. On that date, the claimant denied any headaches, numbness, tingling, weakness or pain in her extremities, neck, back, or abdominal. [Exhibit 1F/37). In June 2010, the claimant complained of lower back pain and pain radiating down her legs; however, examination of the spine showed no spinal tenderness or gross deformities, negative straight leg raises, and normal muscle strength in both her upper and lower extremities. Indeed, although the claimant asserts she had issues walking, she reported that she had been trying to walk a mile on most days of the week. (Exhibits 1F/13-14, 2F/10/11). A July 2010 x-ray of the lumbar spine showed only mild degenerative changes at the L5/S1 level. (Exhibit 2F/100). In October 2010, the claimant was again noted to have negative straight leg raise, normal gait and strength, and no significant tenderness of her lumbar spine. (Exhibit 1F/11). Indeed, records for over a year after the claimant's date last insured continued to show nothing significant other than mild lower back pain (Exhibits 1F/2F). Although more recent exams showed deteriorating discs in her neck, such deterioration manifested over a year after her date last insured (Exhibits 1F, 3F).

> As for the claimant's fibromyalgia, I find that the record fails to demonstrate the alleged limitations claimed by the claimant before the date last insured. The claimant was not diagnosed with fibromyalgia until approximately six months after her date last insured.[12] Even in March 2012, physical examination showed

---

[11] Exhibits refer to June 19, 2012, radiology studies of Ms. Sedillo's hands and feet which were normal. (Tr. 486, 488, 490, 492, 531.)

[12] On June 19, 2012, Ms. Sedillo presented to Rheumatologist Wilmer L Sibbitt, Jr., M.D., for evaluation and therapy of arthralgias. (Tr. 444-48.) Ms. Sedillo complained of pain all over, specifically in her hands, ankles, knees and lower back. (Tr. 444.) Ms. Sedillo reported this had been progressing over the past four years and she believed it was worsening. (*Id.*) Ms. Sedillo did not complain of fatigue and stated she had an overall good energy level. (*Id.*) In Dr. Sibbitt's Review of Systems, Ms. Sedillo endorsed weakness, overall muscle pain, left-sided hand second and third MCP pain, and chronic sacroiliac pain. (Tr. 446.) On physical exam, Dr. Sibbitt noted in pertinent

normal neurological findings. (Exhibit 2F/37). In June 2012, the claimant's treating physician found that the claimant had mild synovitis with tenderness at certain muscle points and joints (absent any form of inflammation), which was diagnosed as likely fibromyalgia. (Exhibit 1F/21/23, 2F/19). Therefore, the record fails to substantially develop evidence of fibromyalgia prior to the date last insured.

The record only minimally supports the claimant's allegations regarding her inability to work due to her limitations arising from degenerative disc disease and fibromyalgia. The residual functional capacity takes into account that the claimant experiences some pain and thus may be limited. Consistent with the record, the residual functional capacity takes into account the claimant's impairments relating to degenerative disc disease and fibromyalgia by limiting her exertional activities to a medium level.

(Tr. 21.) Based on her review and discussion of the evidence,[13] the ALJ determined that Ms. Sedillo could perform a full range of medium work. (Tr. 19.)

Assessing a claimant's residual functional capacity is an administrative determination left solely to the Commissioner. 20 C.F.R. §§ 404.1546(c) and 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (stating that some issues are administrative findings, such as an individual's RFC). In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727

---

part mild synovitis with tenderness to palpation second and third left MCP; and tenderness to palpation paraspinal muscles bilaterally and lateral aspect of thigh, sacroiliac joints specifically. (Tr. 446.) Laboratory testing was negative for inflammatory disease. (Tr. 446-47.) Radiographic studies of the left hand and foot were normal. (Tr. 447.) Radiographic chest studies demonstrated no evidence of cardiopulmonary disease or sarcoidosis. (*Id*.) Radiographic lumbar spine studies demonstrated mild degenerative changes at L5-S1. (*Id*.) Dr. Sibbitt assessed fibromyalgia as a likely diagnosis and high risk for sleep apnea, and mild osteoarthritis, especially of spine. (*Id*.) Dr. Sibbitt, *inter alia*, increased Ms. Sedillo's current gabapentin dose, recommended cautious use of nonsteroidal anti-inflammatory drugs, and recommended a sleep study. (Tr. 448.)

[13] Elsewhere in her determination the ALJ discussed Ms. Sedillo's testimony, work history, and Shawna Culler's Third-Party Adult Function Report. (Tr. 20-22.)

F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. § 404.1545(a)(2) and (3). The ALJ must consider and address medical source opinions and must always give good reasons for the weight accorded to a treating physician's opinion. 20 C.F.R. § 404.1527(c)[14]; SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that her RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003).

Ms. Sedillo argues that the ALJ's RFC is not supported by substantial evidence for three reasons. First, she argues that the ALJ failed to consider all of the limitations related to her fibromyalgia. (Doc. 22 at 5-10.) Second, she argues that the ALJ improperly accorded little weight to Ms. Sedillo's treating source opinion regarding her ability to do work-related physical activities. (*Id.* at 10-12.) Third, she argues that the ALJ failed to properly assess Ms. Sedillo's statements regarding the intensity, persistence, and limiting effects of her symptoms. (*Id.* at 12-14.) The Commissioner contends that although the ALJ found there was sufficient evidence to find Ms. Sedillo's fibromyalgia severe at step two, she reasonably determined at step four that

---

[14] For all claims filed on or *after* March 27, 2017, 20 C.F.R. § 404.1527 was rescinded and replaced with 20 C.F.R. § 404.1520c. 82 Fed. Reg. 5844, 5869. Further, the Social Security Administration rescinded SSR 96-2p effective March 27, 2017, to the extent it is inconsistent with or duplicative of final rules promulgated related to Giving Controlling Weight to Treating Source Medical Opinions found in 20 C.F.R. § 404.1527. 82 Fed. Reg. 5844, 5845.

there was no evidence that Ms. Sedillo had functional limitations from fibromyalgia prior to her date of last insured that would preclude her from performing medium work. (Doc. 26 at 4-8.) The Commissioner further contends that the ALJ provided legitimate reasons for according little weight to PA Abdul Mamdani's September 24, 2013, medical opinion regarding Ms. Sedillo's ability to do work related activities. (*Id.* at 8-9.) The Commissioner also contends that the ALJ reasonably determined that Ms. Sedillo's statements regarding the intensity, persistence and limiting effects of her symptoms were inconsistent. (*Id.* at 9-12.)

### 1. <u>Fibromyalgia</u>

Ms. Sedillo argues that she experienced fibromyalgia symptoms during the relevant period of time and that they should have been translated into greater functional limitations. (Doc. 22 at 5-7, 10.) She further argues that the postdated medical evidence and her hearing testimony are consistent with and support that she experienced fibromyalgia symptoms during the relevant period of time. (*Id.* at 7-8.) For example, Ms. Sedillo asserts that she reported to medical providers in 2012 and later that her all-over body pain and headaches had been present and progressing for years, and that she testified at the hearing that she had problems prior to December 2011 with walking, joint pain, constipation, diarrhea, depression, insomnia, and swelling in her hands. (Doc. 22 at 7-9.)

The ALJ properly considered the postdated fibromyalgia diagnosis[15] and determined at step two that Ms. Sedillo had a severe impairment of fibromyalgia *through the date of last insured*.[16] (Tr. 17.) *See Baca v. Dep't of Health and Human Servs.*, 5 F.3d 476, 479 (10th Cir.

---

[15] *See* fn. 11, *supra*.

[16] Much of Ms. Sedillo's argument focuses on the relevance of the postdated medical records in establishing the existence of fibromyalgia prior to Ms. Sedillo's last date of insured. (Doc. 22 at 5-10.) However, the ALJ determined at step two that Ms. Sedillo's fibromyalgia was a severe impairment. (Tr. 17.) As such, the ALJ considered the postdated medical records to the extent they related back to the period of disability.

1993) ("Evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.") (quoting *Gold v. Secretary of Health, Educ. & Welfare*, 463 F.2d 38, 42 (2d Cir. 1972) (quoting *Carnevale v. Gardner*, 393 F.2d 889, 890 (2d Cir. 1968)). That said, an ALJ's findings at step two require only a "de minimis" showing of impairment. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *see also Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (stating that if a claimant is able to show that his impairment would have more than a minimal effect on his ability to do basic work activity he has made a *de minimis* showing). When a claimant's impairments do not meet or equal in severity the requirements of any impairments in the Listings, as is the case here, the ALJ uses her step two findings as a basis for her step four and five findings. SSR 96-8p, 1996 WL 374184, at *2 (instructing that an adjudicator must consider only limitations and restrictions attributable to medically determinable impairments). Thus, whether an identified impairment causes physical or mental limitations or restrictions that affect a claimant's capacity to do work-related physical and mental activities at steps four and five is an entirely separate and different analysis.

At step four, the ALJ considered Ms. Sedillo's fibromyalgia in making her RFC assessment, as she was required to do. *See* SSR 96-8p, 1996 WL 374184, at *2 (the RFC assessment must consider limitations and restrictions attribute to medically determinable impairments) *see also* SSR 12-2p, 2012 WL 3104869, at *6 (guidance for determining the RFC assessment for a person with fibromyalgia). In so doing, the ALJ discussed that the record failed to substantially develop evidence of fibromyalgia related limitations prior to the date last insured.

The record supports this finding.[17]  Further, although Ms. Sedillo testified she experienced more limiting and/or disabling fibromyalgia symptoms in 2011,[18] the medical record evidence prior to the date last insured does not demonstrate subjective complaints and/or objective evidence of more limiting and/or disabling fibromyalgia symptoms.  Additionally, the postdated medical records fail to reference objective medical findings and/or functional limitations that directly related to Ms. Sedillo's fibromyalgia during the insured period.  *See Baca*, 5 F.3d at 479 (describing references in postdated records to specific medical records, charts, and hospitalizations during the insured period that provided direct medical evidence to physical and mental impairments prior to the expiration of claimant's insured status).  Instead, they contain Ms. Sedillo's subjective history to medical providers of migraine headaches and chronic body, joint and muscle pain that she alleges to have experienced before and during the relevant period of time,[19] but for which the objective evidence from the insured period does not support.  The

---

[17] The entirety of the medical evidence record during the relevant period of time consists of only three records in 2010 – one for an acute illness; *i.e.*, strep, and two records that were focused primarily on Ms. Sedillo's complaints of low back pain, for which radiology studies demonstrated no acute abnormality with only mild degenerative changes at the L5-S1 level.  (Tr. 435-37, 438-39, 462-63, 496.)

[18] Ms. Sedillo testified that prior to 2011 she had problems walking, joint pain, constipation, diarrhea, depression, insomnia, and swelling in her hands.  (Tr. 190-92, 198-99.)  Additionally, Ms. Sedillo argues that the record supports she experienced fibromyalgia symptoms during the insured period such as ear, neck, arm, abdominal, and low back pain, as well as fatigue and headaches.  (Doc. 22 at 6-8.)  The record demonstrates that on February 25, 2010, Ms. Sedillo reported a ten day history of right ear and neck pain in the lymph area associated with cough, sweats and chills.  (Tr. 462.)  Ms. Sedillo reported on that date she wanted to "sleep all the time."  (*Id.*)  On October 11, 2010, Ms. Sedillo reported an acute episode of abdominal pain that was resolved; she also reported being tired.  (Tr. 435-36.)  Ms. Sedillo's lower back pain was attributed to mild degenerative changes at L5-S1.  (Tr. 496.)  The Court's review of the medical record does not reveal any reports of or treatment for arm pain or headaches during the insured period.

[19] On June 19, 2012, six months after her date of last insured, Ms. Sedillo reported to Dr. Sibbitt that her pain symptoms had been progressing over the past four years and worsening.  (Tr. 444.)  On December 17, 2012, one year after her date of last insured, Ms. Sedillo reported to PA-C Mamdani she had a history of migraine headaches and they were getting worse.  (Tr. 541.)  On February 15, 2013, fourteen months after her date of last insured, DO William Evan Rivers reported in a letter to Yumna A. Thariani, M.D., that Ms. Sedillo reported that since the death of her mother in 2009 (Tr. 182), she experienced pain all over her body, tingling and pain in both her arms, whole body numbness, and migraines lasting for four days at a time.  (Tr. 576-77.)  On May 2, 2014, two and a half years after her date of last insured, Ms. Sedillo reported to Benson R. Daitz, M.D., that her chronic pain complaints started 5 or 6 years ago.  (Tr. 736.)

ALJ therefore considered Ms. Sedillo's symptoms in light of her postdated fibromyalgia diagnosis and the medical evidence from the insured period and determined there was no impact on her RFC prior to her date of last insured.

The record contains evidence demonstrating the progression of Ms. Sedillo's fibromyalgia symptoms after the date of last insured. Ms. Sedillo in fact reported to medical providers after her date of last insured that her symptoms were "progressing" and "worsening." For example, on June 19, 2012, she reported her symptoms had been progressing and worsening over the past four years. (Tr. 444.) On January 4, 2013, Ms. Sedillo reported that she initially experienced numbness only in her legs, but that now it had progressed to her neck and down. (Tr. 834-35.) On September 20, 2013, Ms. Sedillo reported that her pain was getting worse "day by day," and that she had a new two-month onset of foot pain. (Tr. 677.) While medical evidence after the date of last insured status may be relevant, the key is that the subsequent evidence bears upon the severity of the claimant's impairments during the period between the onset date and the last insured status date. *Baca*, 5 F.3d at 479; *see also Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (finding that proffered evidence must relate to the time period of which the benefits are denied); *Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (noting that the physical limitations imposed by symptoms of fibromyalgia lend themselves to objective analysis). This nexus is established by evidence from which it could reasonably be presumed that the limitations existed as of the earning requirement date. *Baca*, 5 F.3d at 479. When there is no evidence in the record suggesting that a claimant has experienced a disabling impairment during the insured period, subsequent evidence, including a physician's retrospective diagnosis, is insufficient. *Id.* (citing *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)); *see also Flint v. Sullivan*, 951 F.2d 264, 268 (10th Cir. 1991) (while the onset of an impairment may be traceable

to the relevant period of time, there must be evidence to suggest that the claimant experienced disabling effects of her impairment during the relevant period). Here, Ms. Sedillo has failed to cite objective evidence for which it could reasonably be presumed that she manifested more limiting or disabling fibromyalgia symptoms during the insured period such that it would impact the ALJ's RFC.

### 2. Abdul Mamdani, PA-C

Ms. Sedillo established care with PA-C Abdul Mamdani at University of New Mexico Health Sciences Outpatient Clinic on March 12, 2012, three months after her date of last insured. (Tr. 548-50.) At her first visit, she reported a one-week history of left ear pain and a three-day history of left arm pain. (Tr. 548.) She further reported her back was hurting, her hands would swell, and that sometimes she was not able to walk when she got out of bed. (*Id.*) She stated she had stomach pain for six months which she attributed to irregular menses. (*Id.*) Ms. Sedillo also stated she had been diagnosed with osteoporosis "a couple of years ago." (*Id.*) On physical exam, PA-C Mamdani noted a full range of motion in upper and lower extremities and lumbar and cervical spine, and that Ms. Sedillo expressed pain on flexion and extension of lumbar spine and on internal and external rotation of upper extremities. (Tr. 549.) (*Id.*) PA-C Mamdani assessed chronic back pain and prescribed Gabapentin. (*Id.*)

Ms. Sedillo saw PA-C Mamdani six more times over the next eighteen months for follow-up pain management and routine care, during which time he referred her to rheumatology and pain management. (Tr. 536-47, 677-79.) On September 24, 2013, PA-C Mamdani completed a form *Medical Opinion Re: Ability to Do Work-Related Activities* on Ms. Sedillo's behalf. (Tr. 853.) PA-C Mamdani indicated that Ms. Sedillo was able to lift and/or carry ten pounds occasionally; lift and/or carry less than ten pounds frequently; was limited to four hours

of standing and/or walking in an eight hour workday; and limited to four hours of sitting in an eight hour workday. (Tr. 853.) PA-C Mamdani assessed that Ms. Sedillo would need freedom to shift between sitting and standing/walking, and would need to lie down at unpredictable times during an eight hour workday. (*Id.*) PA-C Mamdani's opined that Ms. Sedillo was not capable of performing a full-time job that is eight hours per day, five days per week, on a regular and continuing basis. (*Id.*)

The ALJ accorded little weight to PA-C Mamdani's opinion. She explained that PA-C Mamdani was not an acceptable medical source and could not establish severe impairments, but that she considered PA-C Mamdani's opinion with respect to the severity and effect on Ms. Sedillo's functional limitations. (Tr. 21-22.) The ALJ further explained that PA-C Mamdani did not start treating Ms. Sedillo until after the date last insured and did not complete the assessment form until eighteen months after the date last insured. (Tr. 22.) As such, the ALJ concluded that PA-C's Mamdani's opinion did not address Ms. Sedillo's functional limitations prior to the date of last insured. (*Id.*)

Ms. Sedillo argues that the ALJ improperly weighed PA-C Mamdani's opinion regarding her ability to do work-related activities for two reasons. (Doc. 22 at 10-12.) First, she contends that the ALJ misstated the law that PA-C Mamdani's opinion "cannot constitute documentation of severe or disabling vocational limitations." (Doc. 22 at 12.) Second, she contends that it was improper for the ALJ to reject PA-C Mamdani's opinion because he only began treating Ms. Sedillo after the date last insured. (*Id.*) Ms. Sedillo asserts that the ALJ should have recontacted PA-C Mamdani before rejecting his opinion. (*Id.*) The Commissioner argues that the ALJ reasonably discounted PA-C Mamdani's opinion because it did not address Ms. Sedillo's functional limitations during the relevant period of time. (Doc. 26 at 8-9.)

PA-C Mamdani is considered an other medical source.[20]  Evidence from other medical sources may be used "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function."  *Id.*; *see* SSR 06-03p,[21] 2006 WL 2329939, at *2. "Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03p,[22] 2006 WL 2329939, at *2.  An ALJ is required to explain the weight given to opinions from other medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6;[23] *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning).

Here, although the ALJ stated that PA-C Mamdani's opinion "cannot constitute documentation of severe or disabling vocational limitations," she also stated that she considered PA-C Mamdani's opinion "with respect to [the] severity and effect on function."  As such, the Court finds no error in her statement of the legal standard for considering PA-C Mamdani's

---

[20] Other medical sources are nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist.  SSR 06-03p, 2006 WL 2329939, at *2.  (Effective March 27, 2017, 20 C.F.R. § 404.1502 was amended to include licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants as acceptable medical sources, but only with respect to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5863 (2017).  SSR 06-03p was also rescinded to the extent it is inconsistent with or duplicative of final rules related to Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decision on Disability by Other Governmental and Nongovernmental Agencies *Id.* at 5845.)

[21] *See* fn. 18, *supra*.

[22] *See* fn. 18, *supra*.

[23] *See* fn. 18, *supra*.

opinion as other medical source evidence. In conducting its review, the Court "should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier [the Court's] task; but [the Court] cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Additionally, the ALJ did not only state, as Ms. Sedillo asserts, that she accorded little weight to PA-C Mamdani's opinion because he began treating Ms. Sedillo after the date last insured. Rather, the ALJ additionally explained that PA-C Mamdani's opinion did not address Ms. Sedillo's functional capacity prior to the date last insured. (Tr. 22.) The record supports this finding. (Tr. 853.) PA-C Mamdani did not indicate that his assessment was retroactive, nor did PA-C Mamdani make a direct reference to the time period adjudicated by the ALJ. *See Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (finding that post-dated-last-insured medical evidence generally is admissible in a Social Security disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition); *see also* Commissioner's Hearings, Appeals and Litigation Manual ("HALLEX") I-3-3-6(B) (explaining when evidence could be related to the relevant period). Therefore, discounting PA-C Mamdani's medical source statement because it did not address Ms. Sedillo's functional capacity prior to the date last insured is a legitimate reason for doing so.

Finally, the ALJ did not err in not recontacting PA-C Mamdani. Tenth Circuit case law instructs that an ALJ need only recontact a treating source for clarification "[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir 2004); *see also White v. Barnhart*, 298 F.3d 903, 908 (10th Cir. 2001) (the ALJ's duty to recontact the treating physician is triggered where the information received is inadequate and so incomplete that it cannot be considered). Further,

under the current regulations, evidence, including medical opinions, is considered insufficient when it does not contain all the information needed to make a determination or a decision whether a claimant is disabled. 20 C.F.R. §§ 404.1520b(b). In that case, an ALJ *may* recontact a treating/medical source, *inter alia*, if after weighing all the evidence she cannot reach a conclusion about whether a claimant is disabled. 20 C.F.R. §§ 404.1520b(b)(2). Here, the ALJ reasonably determined that PA-C Mamdani's opinion did not relate to the relevant period of time. As such, she was able to make her determination whether Ms. Sedillo was disabled without any additional information from PA-C Mamdani.

### 3. Evaluation of Symptoms

Ms. Sedillo argues that the ALJ failed to properly assess Ms. Sedillo's statements regarding the intensity, persistence, and limiting effects of her symptoms. (*Id.* at 12-14.) For example, she asserts that although she performed household chores during the insured period, she only did so when she did not have a headache. (*Id.* at 12.) She further asserts that although she reported walking a mile every day for exercise, she also reported to medical providers that her symptoms precluded her from exercising, and testified that she could only walk for short distances before becoming out of breath. (*Id.* at 12-13.) Finally, she asserts that her limited treatment for pain during the insured period; *i.e.,* analgesics, fails to account for the various medications she had been prescribed by the end of 2012. (*Id.*) The Commissioner contends that the ALJ properly considered Ms. Sedillo's symptoms in the context of the record as a whole, and set forth specific evidence in her evaluation of Ms. Sedillo's statements regarding the intensity, persistence, and limiting effects of her symptoms during the insured period. (Doc. 26 at 9-12.)

"Credibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." *Newbold v.*

*Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (quotation omitted). Although an ALJ "need not make a formalistic factor-by-factor recitation of the evidence" pertaining to a claimant's credibility, she should consider such facts as her daily activities, reactions to treatment, "persistent attempts to find relief for her pain[,] . . . willingness to try any treatment prescribed, regular use of crutches or a cane, [and] regular contact with a doctor." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Here, the ALJ summarized Ms. Sedillo's testimony that prior to 2011 she had headaches, vomiting, back issues, inflammation in her hands, issues sleeping and depression, as well as her limitations in standing, walking and sitting. (Tr. 20.) She also summarized Ms. Sedillo's testimony regarding her ability to perform household chores such as cleaning and laundry in 2011. (Tr. 22.) Finally, the ALJ noted that Ms. Sedillo's only treatment for pain during the insured period was analgesics. The record supports these findings. (Tr. 203-04, 435.) The record also supports that Ms. Sedillo testified when asked about what she did on a daily basis back in 2011, that she fed the dogs, watered the lawn, took her children to school, ran errands, cooked, and grocery shopped.[24] (Tr. 203-204.) Moreover, the objective medical evidence from the insured period does not support Ms. Sedillo's symptoms as alleged. Thus, the ALJ properly described the inconsistencies between Ms. Sedillo's alleged symptoms in 2011 and her activities of daily living, as well as her attempts to find relief for pain. As such, the Court finds that the ALJ's findings are closely and affirmative linked to substantive evidence and not just a conclusion in the guise of findings. *Newbold*, 718 F.3d at 1267. The Court will not upset the ALJ's determination. *Id.*

---

[24] When later questioned by her lawyer, Ms. Sedillo testified that in 2011 headaches would interfere with her ability to household chores. (Tr. 204-205.)

For the foregoing reasons, the Court finds the ALJ reviewed the evidence in the record and provided a narrative discussion describing how the evidence supported her RFC assessment. *Southard*, 72 F. App'x at 784-85. There is no reversible error as to this issue.

## C.     Past Relevant Work

Based on her RFC assessment, the ALJ determined that Ms. Sedillo could perform her past relevant work as an administrative clerk. (Tr. 22-23.) Ms. Sedillo argues that the ALJ's past work finding is incomplete and incorrect for two reasons. (Doc. 22 at 14-16.) First, she argues that the ALJ's RFC should have included specific limitations regarding her ability to stand, walk, sit for prolonged periods of time, or to use her hands and arms. (*Id.* at 14.) Second, she argues that the ALJ failed to question the VE about whether Ms. Sedillo could perform her past work as an administrative assistant, and failed to determine the demands of Ms. Sedillo's past relevant work. (*Id.* at 15.) Ms. Sedillo specifically asserts that the ALJ's findings were inadequate because the DOT is outdated and in all likelihood an administrative assistant job now requires computer skills that Ms. Sedillo does not possess. (Doc. 22 at 15, Doc. 27 at 5.) The Commissioner contends that the ALJ is not required to obtain VE testimony at step four and that the ALJ's findings satisfied her step four requirement. (Doc. 26 at 12-13.)

"Step four of the sequential analysis . . . is comprised of three phases." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). "In the first phase, the ALJ must evaluate a claimant's physical and mental . . . RFC . . . and in the second phase, [she] must determine the physical and mental demands of the claimant's past relevant work." *Id*. "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the . . . limitations found in phase one." *Id.* "At each of these phases, the ALJ must make specific findings." *Id.*

The ALJ's determination that Ms. Sedillo could perform her past relevant work as an administrative assistant is supported by substantial evidence. Ms. Sedillo's first argument necessarily fails because the Court has determined that the ALJ's RFC is supported by substantial evidence. *See* Section III.B., *supra*. As to Ms. Sedillo's second argument, an ALJ is not required to obtain vocational expert testimony at step four. *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994). Further, after determining Ms. Sedillo's RFC, the ALJ determined that Ms. Sedillo could meet the physical demands of her past relevant work as an Administrative Clerk, DOT code 219.362-010, which is performed at a light exertion level and is semi-skilled, with a Specific Vocational Preparation of 4.[25] (Tr. 22-23.) *See* 20 CFR § 404.1560 (an ALJ may rely on information a claimant provides about their past relevant work and use the Dictionary of Occupational Titles to obtain evidence to determine whether a claimant can do her past relevant work, given her RFC).[26] The ALJ explained that

> [i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as generally performed in the national economy. The residual functional capacity limits the claimant to medium exertional work. The claimant's past relevant work is light exertional work. As such, the claimant is not restricted by the residual functional capacity from performing this work. Indeed, the claimant testified she left this job because she had another offer for better pay, not because of any exertional or nonexertional limitations.

(Tr. 23.) Thus, the ALJ's phase-two findings tracked the specifics of the ALJ's RFC assessment; *i.e.* that Ms. Sedillo could perform medium exertional level work. The ALJ's analysis and conclusion also adequately addressed Ms. Sedillo's ability to satisfy the job demands of her past

---

[25] The DOT job description for Administrative Clerk was last updated in 1988. *See* DOT Code 219.362-010. The job description includes, *inter alia*, "[o]perates office machines, such as typewriter, adding, calculating, and duplicating machines. . . . *May operate computer terminal* to input and retrieve data. . . ." *Id.* (Emphasis added.)

[26] Ms. Sedillo reported and testified that she worked for APS as secretary from November 1996 through July 2003. (Tr. 189-90, 320-21.) She reported that she used machines, tools and equipment, used technical knowledge and/or skills, and completed written reports in performing her duties. (Tr. 321.) Ms. Sedillo also reported working as an operator for PNM *after* the job with APS in which she "answered phones and *on computer access.*" (Tr. 324.) (Emphasis added.)

relevant work as an administrative assistant, given her phase-one limitations.[27] The ALJ also satisfied her responsibility at phase three that she determine whether Ms. Sedillo had the ability to meet those job demands despite her phase one limitations. *Winfrey*, 92 F.3d at 1023; *Jones v. Colvin*, 647 F. App'x 878, 882-83 (10th Cir. 2016) (unpublished).

For the foregoing reasons, the ALJ's findings are adequate to satisfy the step four requirements. There is no reversible error as to this issue.

### D.    Step Five Findings

The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citing *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988)). If the claimant successfully meets her burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given her age, education, and work experience. *Id.; see also* 20 C.F.R. §§ 404.1560(c)(2) and 416.960(c)(2) (explaining that at step five the Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that claimant can do, but is not responsible for providing additional evidence about a claimant's RFC).

Here, the ALJ determined at step four that Ms. Sedillo was not disabled. However, she made alternative findings at step five as follows:

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, I make the following alternative findings for step five of the sequential evaluation process.

---

[27] Ms. Sedillo did not have any mental impairments. *See Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996) (finding that when a claimant has a mental impairment care must be taken to obtain a precise description of the particular job to determine if claimant's mental impairment is compatible with the performance of such work).

The claimant was born on July 3, 1969 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563). The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). Transferability of skills is not material to the determination of disability because applying the Medical Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

. . .

Based on a residual functional capacity for a full range of medium work, I conclude that, through the date last insured, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.29.

(Tr. 23.)

Ms. Sedillo argues that because the ALJ erred in her RFC determination by failing to include limitations related to fibromyalgia, the ALJ was precluded from relying on the grids for a disability determination at step five. (Doc. 22 at 16-17.) Ms. Sedillo's argument, however, necessarily fails because the Court finds that the ALJ's RFC finding that Ms. Sedillo could perform a full range of medium level work is supported by substantial evidence. *See* Section III.B., *supra*. Moreover, "[w]hen a claimant's exertional level, age, education, and skill level (*i.e.,* work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (citing *Trimiar v. Sullivan*, 966 F.3d 1326, 1332 (10th Cir. 1992)). Here, Ms. Sedillo's RFC, age, education, and skill level fit precisely within the criteria of the grid rules.[28] The ALJ, therefore, appropriately relied on Medical-Vocational Rule 203.29 to determine that Ms. Sedillo was not disabled at step five. There is no reversible error as to this issue.

---

[28] Rule 203.29 directs that a younger individual (age 18 through 49), high school graduate or more, and with previous skilled or semi-skilled work experience is not disabled. 20 C.F.R. pt. 404, subpt. P. app. 2. *See* Table No. 3 – Residual Functional Capacity: Maximum Sustained Work Capability Limited to Medium Work as a Result of Severe Medically Determinable Impairment(s). *Id.*

## Conclusion

For the reasons stated above, Ms. Sedillo's Motion to Reverse and Remand for Rehearing (Doc. 22) is **DENIED.**

**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**